IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

NICHOLAS M. ARNOLD,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

<u>                    </u>Defendant.

Case No. 6:11-cv-06360-HZ

OPINION & ORDER

KATHRYN TASSINARI
MARK A. MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street, Suite 200
Eugene, Oregon 97401
      Attorneys for plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

FRANCO L. BECIA
Special Assistant United States Attorney
Office of General Counsel

1 – OPINION & ORDER

Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

HERNANDEZ, District Judge:

Plaintiff Nicholas Arnold brings this action for judicial review of the Commissioner's decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Mr. Arnold was born on January 27, 1983. Tr. 225. He dropped out of high school in the ninth grade but later obtained his GED; Mr. Arnold also attended college for more than one year. Tr. 80-81, 245, 312. He reported working briefly as a fast food worker, produce packer, and carwash attendant. Tr. 115, 240-41. Mr. Arnold stopped working on January 1, 2006. Tr. 240.

On February 26, 2009, Mr. Arnold protectively filed an application for SSI, alleging disability as of March 31, 2003 due to depression, post-traumatic stress disorder ("PTSD"), schizophrenia, and hearing voices. Tr. 225-30. After the application was denied initially and upon reconsideration, Mr. Arnold requested a hearing before an administrative law judge ("ALJ"). Tr. 140-44, 151-56. On June 14, 2011, a hearing was held before ALJ Michael Gilbert, at which Mr. Arnold testified and was represented by counsel; medical expert ("ME") Ronald Klein, Ph.D., and vocational expert ("VE") Jeff Tittlefitz also testified. Tr. 30-121. On July 29, 2011, the ALJ issued a decision finding Mr. Arnold not disabled within the meaning of the Act. Tr. 11-24. After the Appeals Council denied review of the ALJ's decision, Mr. Arnold filed a complaint in this Court. Tr. 1-3.

2 - OPINION & ORDER

## SEQUENTIAL DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The initial burden of establishing disability rests upon the claimant. Id.; Yuckert, 482 U.S. at 146 n.5. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett, 180 F.3d. at 1100.

At step one, the Commissioner determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the Commissioner determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii).

At step three, the Commissioner determines whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is presumptively disabled. 20 C.F.R. § 416.920(a)(4)(iii).

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." If the claimant can perform such work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv); *Yuckert*, 482 U.S. at 141. At step five, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy; if the Commissioner cannot meet this burden, the claimant is disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(f); Tackett, 180 F.3d at 1099. Conversely, if the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g); Tackett, 180 F.3d at 1099.

## THE ALJ'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ found that Mr. Arnold had not engaged in substantial gainful activity since the application date. Tr. 14. At step two, the ALJ determined that Mr. Arnold had the following severe impairments: polysubstance abuse disorder, polysubstance induced mood disorder, and major depressive disorder. Id. At step three, the ALJ found that Mr. Arnold's impairments, either singly or in combination, met listings 12.04 and 12.09. Id. However, the ALJ also found that Mr. Arnold's substance abuse was a material factor in causing his disability; accordingly, the ALJ reassessed Mr. Arnold's impairments and determined that he would not be presumptively disabled at step three if he stopped using drugs and alcohol. Tr. 14-17. Thus, the ALJ continued the evaluation process to determine how Mr. Arnold's medical impairments affected his ability to work.

The ALJ resolved that, absence his substance abuse, Mr. Arnold had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels, as long as the work involved simple, routine tasks of reasoning level no greater than two [and] no contact with the public and no more than occasional contact with coworkers." Tr. 17.

At step four, the ALJ found that Mr. Arnold had past relevant work that he could perform. Tr. 22. The ALJ also entered an alternative finding at step five; the ALJ determined that, considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national and local economy that Mr. Arnold can perform, such as janitor or hand packager. Tr. 23. The ALJ therefore concluded that, "if he stopped the substance abuse," Mr. Arnold would not be disabled under the Act. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

4 - OPINION & ORDER

405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (citation and internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh the evidence that supports and detracts from the Commissioner's conclusions. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). Where the evidence can support either a grant or a denial, the court may not substitute its judgment for that of the Commissioner. Id. (citation omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the court cannot affirm the Commissioner's decision upon reasoning the ALJ did not assert in denying the claimant benefits. Bray, 554 F.3d at 1225–26 (citation omitted).

## DISCUSSION

Mr. Arnold asserts that the ALJ erred by failing to accommodate the full range of his limitations in the RFC. As a result, Mr. Arnold argues that the hypothetical questions posed to the VE were invalid, such that it was error for the ALJ to rely on that testimony in finding him not disabled at steps four and five.

I.    The ALJ's RFC Assessment

Mr. Arnold contends that the ALJ's RFC did not incorporate: (1) all of Dr. Klein's limitations, even though the ALJ purported to give that opinion great weight; and (2) restrictions for his moderate impairments in social functioning and in concentration, persistence, or pace. The RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ must also evaluate "all of the relevant

5 - OPINION & ORDER

medical and other evidence." SSR 96-8p; 20 C.F.R. § 416.945(a). However, the ALJ's RFC must only incorporate limitations supported by substantial evidence in the record. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

### A.      Dr. Klein's Restrictions

Mr. Arnold first asserts that the ALJ failed to include all of Dr. Klein's limitations in the RFC. At the hearing, Dr. Klein testified that, when Mr. Arnold was not abusing drugs and alcohol, he was not limited in his activities of daily living, moderately limited in social functioning, and moderately limited in concentration, persistence, or pace, with no episodes of decompensation. Tr. 38. However, the only functional limitations that Dr. Klein identified were "working with the general public" and "responding to criticism from supervisors." Tr. 38-39. Dr. Klein expanded upon the latter limitation, explaining that Mr. Arnold's supervisor would need to be "mindful" of the fact that he may have a difficult time responding to criticism; as a result, the supervisor ideally "should do it in a sensitive way or not a lot of voice, give the person a chance to respond, let them blow off steam, then say, okay, not, it's time to get back to work rather than escalate the situation." Tr. 39. The doctor nonetheless concluded that these functional limitations would not preclude Mr. Arnold from maintaining sustained and competitive employment. Tr. 39-40.

In addition, Dr. Klein clarified Mr. Arnold's various diagnoses. Dr. Klein noted that he "was struck by how well [Mr. Arnold] responds to his therapeutic medications" when he takes them on a regular basis, which Mr. Arnold repeatedly failed to do. Tr. 42. The doctor also explained that there was no indication of psychosis, bi-polar disorder, or schizoaffective disorder because the symptomology that Mr. Arnold was subjectively describing to his medical providers

> is either not accurate and not truthful or is something that is related to his drug use. Otherwise, I think [the auditory hallucinations] would have been evident throughout all of the behavioral observations, mental status examinations and so

6 - OPINION & ORDER

>in all do the clinical visits that he did have . . yet this gentleman is routinely observed as behaving like a gentleman with no apparent . . . other stimulus input other than the clinician asking the question.

Tr. 48-51, 59-60. Further, the doctor reported that the diagnosis of PTSD was inaccurate because there was no "precipitating event." Tr. 58-59.

The ALJ summarized this testimony and gave "the greatest weight to the opinion of medical expert Dr. Klein because he had the opportunity to review the medical evidence in its entirety [and because he] clearly explained the rationale for his opinion." Tr. 20. After considering the evidence of record, including the hearing testimony, the ALJ concluded that Mr. Arnold had the RFC to perform a full range of work at all exertional levels but with simple, routine tasks, no contact with the public, and no more than occasional interaction with coworkers. Tr. 17.

Mr. Arnold argues that this RFC fails to integrate Dr. Klein's limitation in his ability to interact appropriately with supervisors. However, because Dr. Klein's opinion was not given controlling weight, the ALJ was not required to develop an RFC that precisely mirrored the ME's opinion; rather, the ALJ had an independent duty to determine, based on the entire record, the most that Mr. Arnold could do despite his limitations. See 20 C.F.R. §§ 416.945(a), 416.946(c). For this reason, the ALJ did not err in assessing an RFC that was, in part, more restrictive than Dr. Klein's testimony. Tr. 20 (rejecting Dr. Klein's evaluation regarding concentration, persistent, or pace and instead adopting Dr. Kennemer's more restrictive assessment). More importantly, Mr. Arnold's argument ignores the other evidence in the record which indicates that, when he did not have access to drugs and alcohol, and was taking his medicine as prescribed, his behavioral problems rapidly resolved.

For example, when Mr. Arnold was at the Oregon State Hospital ("OSH"), he was initially assessed with psychosis, but after six months, his doctors concluded that he was

7 - OPINION & ORDER

primarily a drug-addict, then in remission. Tr. 407. Dr. Eaton, his treating doctor at OSH, opined that he "was quite a functional young man [who] worked well with others and got progressively more into the recovering community." Tr. 408. As a result, Mr. Arnold "was doing well-enough to be given off-grounds without staff or peer privileges [wherein] he would spend up to 10 hours a day at his place of employment and/or visiting family." Id. Additionally, several other medical sources described Mr. Arnold's behavior as appropriate, suggesting that he is capable of acting in a socially-acceptable manner. Tr. 34-44, 421, 447, 460-61, 515.

Further, it is undisputed that the VE identified a significant number of jobs in the national and local economy that an individual who was capable of the full range of work at all exertional levels but with simple, routine tasks, no contact with the public, and no more than occasional interaction with coworkers could perform; the ALJ expressly asked the VE whether, within the jobs identified, "there was any way to account for when in the workplace you're going to get a supervisor who is sympathetic to the mental health needs of a claimant?" Tr. 115-17. The VE responded that "there really isn't," explaining that "there are great supervisors and there's people that . . . have no business being in supervision." Tr. 117-18. Nevertheless, the VE testified that the ideal supervisor, as described by Dr. Klein, "can be found in a competitive workplace," as well as in a sheltered workshop. Tr. 119. Thus, contrary to Mr. Arnold's assertion, the ALJ did include all of Dr. Klein's restrictions in the hypothetical questions posed to the VE, but the VE stated that there was no way to account for how an employer would act when determining whether a significant number of jobs exist that Mr. Arnold could perform.

In sum, Dr. Klein indicated that Mr. Arnold could work in a competitive workplace and the VE denoted that supervisors exist in the competitive workplace that would permit Mr. Arnold to excel, even though not every supervisor would be sympathetic to his mental health impairments. Tr. 40, 118-19. As such, the fact that the ALJ chose to omit the limitation at issue

8 - OPINION & ORDER

in the RFC based on the VE's testimony and the other evidence indicating that Mr. Arnold was capable of exhibiting socially-acceptable behavior was not erroneous. While this evidence may beget an interpretation more favorable to Mr. Arnold, the ALJ's interpretation of Dr. Klein's testimony was nonetheless reasonable in light of the record as a whole and the requirements of the Act. Notably, the Act makes clear that the disability determination hinges not on whether an individual can secure a particular job, but whether work exists that the claimant can perform. See 42 U.S.C. § 423(d)(2)(A). In addition, as the Commissioner notes, "this is not unique to [Mr. Arnold's] situation – all individuals who are capable of working despite mental [or] physical impairments would do better with a supervisor sympathetic to their issues." Def.'s Resp. Br. 10.

Since there are alternative, rational interpretations of the evidence which do not invalidate the ALJ's reasonable conclusions, this Court must defer to the ALJ's interpretation of the evidence in this case. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[e]ven when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"). Therefore, because the ALJ reasonably accounted for the limitations identified by Dr. Klein in light of the entire record, the ALJ's RFC assessment is affirmed in this regard.

### B. Moderate Impairments

Mr. Arnold next argues that the ALJ's restriction to work involving "simple, routine tasks of reasoning level no greater than two [and] no contact with the public and no more than occasional contact with coworkers" fails to account for his moderate limitations in social functioning and in concentration, persistence, or pace.

As a preliminary matter, "[t]he term 'moderate' does not [necessarily] indicate a degree of limitation that must be expressly reflected in the RFC assessment." Bagby v. Astrue, 2012

9 - OPINION & ORDER

WL 1114298, *10 (D.Or. Feb. 7), adopted by 2012 WL 1114288 (D.Or. Apr. 3, 2012) (citation omitted). Rather, the adequacy of the limitation turns on whether the ALJ's assessment "is consistent with the restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008); see also Bagby, 2012 WL 1114298 at *10-11 (restriction to no public contact, occasional contact with coworkers, and simple, routine tasks was adequate to account for the claimant's moderate impairments in social functioning and in concentration, persistence, or pace where the ALJ's RFC was supported by the medical and other evidence); Sabin v. Astrue, 337 Fed.Appx. 617, 620-21 (9th Cir. 2009) (ALJ did not err in determining that, despite moderate difficulties in concentration, persistence, or pace, the claimant could perform "simple and repetitive tasks on a consistent basis"); Bickford v. Astrue, 2010 WL 4220531, *11 (D.Or. Oct. 19, 2010) ("so long as the ALJ's decision is supported by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace").

     In this case, the medical opinions and other evidence support a finding that Mr. Arnold is capable of simple, routine tasks and occasional contact with coworkers, despite any moderate limitations in social functioning and in concentration, persistence, or pace. For example, medical sources that examined Mr. Arnold reported that his cognitive abilities were intact, his mental status exam results were normal, and his attitude and behavior was engaged and appropriate. Tr. 43-44, 421, 447, 460-62, 515. Dr. Dietlein, the only examining source that opined as to Mr. Arnold's functional limitations, determined that "Mr. Arnold is able to understand and remember a variety of instructions[,] sustain his concentration, attention, and to persist[, and] to engage in social interactions at an acceptable level." Tr. 421. Further, as noted above, Dr. Eaton remarked that Mr. Arnold "was quite a functional young man [who] worked well with others [when] not using." Tr. 408.

10 - OPINION & ORDER

In addition, Dr. Kennemer, a consulting source, assessed Mr. Arnold with moderate limitations in these categories but nonetheless concluded that he was capable of performing "simple routine tasks [with] no public contact." Tr. 484-86. Dr. Anderson, another consulting source, determined that Mr. Arnold had mild limitations in social functioning and moderate limitations in concentration, persistence, or pace. Tr. 434. However, Dr. Anderson noted that Mr. Arnold was "able to understand and remember a broad variety of tasks and routines [but should] not deal consistently . . . with the general public." Tr. 440. Dr. Klein, the ME, opined that Mr. Arnold was more than capable of performing "simple routine and repetitive task type jobs"; Dr. Klein further noted that Mr. Arnold would do best with limited public contact and occasional contact with coworkers, "working primarily by himself or with [between] two and five other employees." Tr. 39-42.

As such, the cases that Mr. Arnold cites to, in which the record failed to establish that the claimant's moderate limitations were adequately captured by an RFC for simple, routine work with occasional contact with coworkers, are inapposite. See Pl.'s Opening Br. 18; Pl.'s Reply Br. 4. Further, Mr. Arnold does not identify how the ALJ's RFC restriction is inconsistent with the medical record or articulate any additional restrictions that were necessary to account for these impairments. Regardless, because the RFC must only reflect a limitation that is supported by substantial evidence, and because the record here demonstrates that, when he was not abusing substances, Mr. Arnold was capable of simple, routine tasks with no public contact and with only occasional contact with coworkers, the ALJ's RFC adequately accounted for his moderate impairments in social functioning and in concentration, persistence, or pace. Therefore, because it is based on substantial evidence, the ALJ's RFC assessment is upheld.

11 - OPINION & ORDER

## II. Hypothetical Questions Posed to the VE

Finally, Mr. Arnold asserts that the hypothetical questions that the ALJ posed to the VE were incomplete because they failed to include all of his limitations. As discussed above, however, the ALJ's RFC adequately accounted for all of Mr. Arnold's impairments that were supported by substantial evidence in the record; moreover, the dispositive hypothetical question that the ALJ posed to the VE accurately incorporated all of these limitations. Tr. 116-18. Accordingly, Mr. Arnold is unable to demonstrate that the hypothetical questions to the VE were incomplete or invalid. See Stubbs-Danielson, 539 F.3d at 1173-76; see also Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (ALJ could rely on VE's testimony, even though hypothetical presented to VE did not include all of claimant's alleged limitations, where hypothetical contained all limitations that ALJ found credible and supported by substantial evidence).

## CONCLUSION

The Commissioner's decision is AFFIRMED because it was supported by substantial evidence in the record and based on the correct legal standards. This action is DISMISSED.

IT IS SO ORDERED.

DATED this 4th day of December, 2012.

_____
Marco A. Hernandez
United States District Judge

12 - OPINION & ORDER